Ruffin, Judge.
 

 — This bill is filed to annul or reform a marriage settlement oí the wife’s estate, executed on the day of marriage, in which the Defendant, Duncan. is trustee, upon the ground, that if was obtained by the fraud .of the Defendant, or was executed by the Plaintiffs, under a mistake of the wifi», rela'ing to a material part of it. Th • estates are settled to the use of the (ms-band and wife for their joint lives, but not subject to his debts or
 
 disposal;
 
 and if she survived, to her for life ; and upon her death Without issue living, over to her two sisters and their children.
 

 The D ■h-ndant,
 
 Duncan,
 
 married one of the sisters, and his family thus have the benefit of one half of the estate, in the events just mentioned.
 

 There is no pretence fm setting aside the conveyance, altogether ; for it is clear that a smtiement of some sort was delibero n-iy intended by the parties.
 

 On the outer h.md, it is equally otear, that if the settlement Actually made does not conform to the agreement; of the parties, by omitting material parts of it, through a mistake ail around, or through the fraud of either of the parties to it, Equity will, upon clear proof being made of such fraud or mistake by proper evidence, rectify it.
 

 It is mateiiai to observe, that this is not. a controversy between the husband and wife, between whom the marring' is a valuable consideration. Between them, or as relates to the issue.of tiie marriage, the provisions of the deed would be more carefully scanned, either by themselves, thru* f-tends, O’* counsel. A bargain is always more regarded than a gift. The difficulty here, is with
 
 *405
 
 Enere volunteers; who ungraciously nay, they have got a donado.:, and wiü hold it at aü events,, Tisoj will not hold it, ií if his been obt-tiucd by surprize, «nadue iiífiu-ettce. a mi abano of confidence, by a pm-s irs t. •• ¡ :i to have the deed de two up, or by the mistake of the parties as to itcontents.
 

 ■
 
 A
 
 most important circumstance present itself to oar cons’&Tíiüan upon first opening tills case. The deed is an absolute and irrevocable disposition of the property, although made by a person who was net likely to have issue. Hint an absolute settlement should b * 'wade on the children,of the marriage would not surprise us, We should csp-ct that the husband would require it, and not leave it So the wife, without his consent, or that of die trustee, to appoint it away to strangers, or to the issue of another marriage. But here, issue, though mentioned in the deed, could hardly have been anticipated by a lady fifty years of age. In suris a case, the waist, of a power of revocation ami rc-appoimment astonishes. It is against the proneness of the human '«cart to retain the dominion over property. But if we are surprized at finding no sarii power reserved to the wife during tiie co-verture, how much more must we tie struck, w hen we come to see, that although the deed contemplates her surviving the husb»nd, yet in ih »t event also her hands are perfectly tied. Her estste does not become her own again, though her necessities may require a sale. She is not even allowed to devise it among her own relations. This deed fixes by irreversible doom the course of the lady’s estate, against her own necessary use of if, and power of reasonable disposition, after discoverturc : and tisis, not as against her own children, but as to collate-rals, who are strangers to the consideration upon yi hich it was made. It is impossible for a Court of Justice to say, that any extrinsic evidence, any thing out of this deed itself couid entirely remove the suspicion of fraud»
 
 *406
 
 0r of mistake, arising from gross ignorance in the par^es, vv^'°k ^ese strange omissions create. Nothing but imposition, or taking advantage of a fatuous confidence, C()Ujj (,, to tlie point of actual execution such an in* strument. Upon tlie face of the deed, it is fraudulent.
 

 In the case before us, the parol evidence does not weaken, but fortifies the conclusion, to which the deed itself points. The answer indeed denies the fraud. The Defendant says th<> husband was in debt, and he felt bound to mention it t.« his sister-in-law j that it was deemed by -him and her an act of prudence, to secure the estate from his creditors, and also to protect her from his influence after marriage. That this was perfectly understood by her, and that in consequence of it, she, in the presence of
 
 Scott
 
 and the Defendant, gave the directions for the settlement, as it was drawn. Admit this ; and it yet remains to be accounted for, why she is left in bonds after her husband’s death. But passing that by for tho present, let us see how the facts are in relation to the wishes and directions of the wife. After they were given, the Defendant admits, that lie and
 
 Scott
 
 were to attend Counsel together to communicate them ; and that before they left the Defendant’s house,
 
 Scott
 
 told him, that he understood them differently. As he understood the lady, a power was to be reserved to her, notwithstanding the coverture, to dispose absolutely of the estates. This would have been an extraordinary power, which the husband would not readily have agreed to, if issue had been expected. But not anticipating that, it would have argued an improper design on the part of the husband, since it would have left the wife too open to his persuasions or his compulsion. The truth is, all the parties seem to be very uninformed people. I have no doubt, that the substance was, that a
 
 proper
 
 power of revocation and appointment was to be inserted, and the parties meant to leave it to Counsel to settle; whose duty in such a case is, obviously, to frame it, as this Court
 
 *407
 
 would do, if such a stipulation rested in articles. Upon the. objection of Scott, reference was again had to the lady ; and the Defendant says, she c onfirmed her former instructions, and
 
 Scott
 
 expressed his satisfaction. The account then given in the answer is,**that be and
 
 Scott
 
 we t tog* flier to
 
 Mr. Stanly
 
 to draw the deed ; that there the same difference occurred, when tin-y reported to the Luiy for the bird time : that she repeated her former words, whereupon,
 
 Mr. Stanly,
 
 in conformity thereto, am! with
 
 Scott’s
 
 privity, drew the deed, which was tead and explained 10
 
 Mr. Scott,
 
 who perfectly understood it, and freely executed if. The answer, it is thus seen, unequivocally asserts, that the lady did not wish *ny power of disposition to remain in herself; hut at three different times, and in contradiction to the pertinacious contention of the intended husband to the contrary, gave her instructions to omit such a clause. How does this correspond with other facts given in evidence ? It is true, that there was no person present at the time the instructions were given ; so that the answer cannot be directly contradicted. But a witness swears, that a few days after the marriage, the Defendant told him, that he. had got the property settled on his children and others, so that
 
 Susan
 
 or her husband could not sell it; that a woman was a weak vessel, and could not be trusted ; that she signed against her will, but that after hard work, he got things done pretty much as he wished. It appears from other depositions, that this controversy was discussed in the religious society, to which the parties belonged. Their minister and some of their brethren testify, that the Defendant did expressly admit, in tiie society, that
 
 Miss Kornegay
 
 gave the instructions stated by
 
 Scott
 
 to
 
 Mr.
 
 Stanly; but that he, the Defendant, knew she decided so merely in favor of her lover, and against her ow n interest ; that he was,her friend, and felt bound to protect her, and therefore had the settlement drawn in the simpe it was, and would net relinquish it. These are subse
 
 *408
 
 quent declarations 5 and although they contradict the ans^ye|. point to point, we .should not feel safe in decreeing
 
 v
 
 , , 1 j on them alone. But
 
 Mr. Stanly,
 
 who drew the deed, gayS} that -when
 
 Scott
 
 and
 
 Duncan
 
 first applied to him, that both seemed wholly ignorant of the nature of the intended settlement. They did not then disagree as to her wishes, but were without information. He sent, them back to consult the lady. They returned, and
 
 Scott
 
 represented, that she wished the estates settled on herself, so that she might dispose of them, notwithstanding her coverture
 
 ;
 
 while
 
 Duncan
 
 insisted, that she desired it to be on her husband and herself for their joint lives, and berself for life, if she survived^ with a vested remainder to her relations. This produced an altercation, which induced
 
 Mr. Stanly
 
 to request that the lady herself might attend him, which they declined. Why was he not requested to visit her ? Why was the lady debarred from an interview 'with Counsel ?
 
 Mr Stanly
 
 then suggested different provisions, and made a memorándum of them — which
 
 Scott
 
 and
 
 Duncan
 
 assented to. He then drew the deed, and delivered it to
 
 Duncan,
 
 with instructions to have it read and
 
 explained to the lady.
 
 Is it. not clear, from this explicit statement of the intelligent gentleman, who was consulted by these men, that, the deed was framed, either
 
 against
 
 the instructions of
 
 Miss Kor-negay,
 
 or
 
 without
 
 them ? Can there be a material difference, in a case of this sort, which was the fact? But a circumstance occurred at the execution of the paper, whirh leaves no doubt, that the representation, in the answer, of her wishes, is. absolutely false. The Defendant says, that the lady wished not to have the power of disposition. Adhering to the letter of
 
 Mr. Stanly’s
 
 in'£ structions, and to that only, he did not request this, or any o'her legal gentleman, to give the explanation, but procured a neighbour, just before the marriage ceremony, to read it.
 
 Mr. Lente,
 
 who is one of the subscribing witnesses, was the person selected. Now he and the»
 
 *409
 
 other witness both say, that when hr began to read it,
 
 Miss lioncsaii
 
 a‘-kcd, “
 
 whether she coiitd. .stilt do os she
 
 ° * a
 
 pleased with her ptoperfyP"
 
 Can títere be ihe ieast hr-sits*>ion after this, that lire instructions were for a [tower of revocation or disposition ? But it is then » reliance,, that the deed was read over 1o her : and itisargmd, that a mistake of its legal operation could not be averred. St is dear, that where the parties are prrfr-csly aware of the actual contents of a deed ; and each acting on his owa judgment, or that of his Counsel, omit to insert a clause, for fear it may affect the deed in law, they cannot he helped. But here the question is one of imposition and abuse of confidence. The very enquiry is, whether she did, in fact, know and understand what was in the deed, and what not? It was read to her, it is true. But what a time to produce a complicated marr iage settlement to an us¡instructed female, dressed for her marriage ! Was it read to her, in the hope that she would, or would not understand it? To whom could she apply for advice, but the very person who had contrived the imposition on her? 1 wonder that she had not signed and sealed without a question. But even at that moment, the strong desire of controlling one’s own property showed itself, and prompted the question, “ can i .-till do as S please with my property ?” The answer given by the witness was,
 
 “
 
 yes, you can ; but
 
 Mr. Scott
 
 cannot.” This was all she wanted ; and in confidence of that, she was willing to execute the deed. It was read through j hut can It he supposed that she heard it, or hearing it, comprehended it? The man who was bound, in honor, con - science and law, to advise her, was silent, and fostered the deception.
 

 The evidence then, out of the deed, goes beyond a naked confirmation of the inference from the «leed itself of a mistake. It proves actual and deliberate imposition by the Defendant. All his rights therefore, ai:d ail the be* nefits resulting to the sisters and tkeir children from this
 
 *410
 
 imposition must yield to the superior equity of this lady to have the settlement reformed.
 
 (Huguenin v. Basely
 
 , 14
 
 Ves.
 
 289.)
 

 But it is argued, that the Court cannot reform this settlement, without, inserting a clause which will render the whole deed nugatory; as it will place the wife in the husband’s power. This bill is called the husband’s
 
 bill;
 
 because the wife is sunk in him during the coverture, and her wishes cannot be known. The rights of husband and wife are not in conflict in this suit, or touching the matter of it. He derives no benefit, under the settlement, find no decree can be had against him. The “Court indeed would not set aside a settlement upon such a bill, and let the husband in to iiis legal rights. As to reforming it, the Court will take care to secure the interest of the wife, so far as consistent with the true spirit of the intended provision, which has been omitted. Here, that was a pow er of disposition to the wife during cover-ture. That she is now entitled to. But as we cannot suppose, that it was meant to be of such a general character, as would leave her at the mercy of her husband, it must be so restricted as' to protect her. If her real wishes had been laid before the conveyancer, he would certainly have declared a trust for her in fee of the lands, and in absolute property of the chattels, upon her becoming
 
 discovert:
 
 and also, a power of revocation and of appointment by will, or a paper writing, properly attested by two credible witnesses, in the nature of a will, executed during the coverture, in case she died during the lifetime of her husband. This at once reserves to her a reasonable control over her own estates, and secures the free exercise of it, as far as it is now possible to be done, except by super-adding the consent of the trustee. That Would be done, if the Court had a faithful one before it. But this trustee has already so far abused his relation to the Plaintiff, and the confidence reposed in him, that no discretion can be allowed to him. The Court decrees
 
 *411
 
 therefore, that the marriage settlement be reformed in the particulars mentioned $ and that a conveyance be made to such trustees as the Plaintiffs, witn the approbation of the Clerk, may select, to be executed by the Plaintiffs and Defendant, and the trustee to be selected, in which trusts to that effect shall be declared ; which deed shall refer to the deed in the pleadings mentioned, and to this decree, and be settled and approved by the Clerk of this Court, and acknowledged before a-Judge of the Superior Court or of this Court j and that the Defendant pay ail the costs of this suit.
 

 Per Curiam.
 

 — Decree accordingly.